BEAUMONT TRACTION COMPANY V. TEXARKANA & FORT SMITH RAILWAY COMPANY.

No. 1958.   Decided December 15, 1909.

1.—Street Railway—Railroad—Lights at Crossing—Contract—Consideration.

The duty common to a railroad and a street car company to protect the public at a street crossing where their tracks intersect furnishes sufficient consideration to support a contract between them to share the expense of a light which the city might require either to maintain at such crossing.   (P. 53).

2.—Same—Right to Lay Tracks.

If it be conceded that a railroad which had laid its tracks in the street by permission of the city authorities, having no right in the premises except that so conferred, had no power to refuse or impose conditions on the right of a street

railway having similar rights from the city to cross its tracks, the recital of its consent to such crossing by the street railway as a consideration for a contract by the latter to share the expense of maintaining such lights at the crossing as might be required by the city, was of a consideration merely invalid in itself, but not illegal, and did not vitiate such contract where another consideration supporting it existed.   (Pp. 53. 54).

### 3.—Contract—Assumption of Obligation.

Where one street railway company, in buying out another, assumed all existing debts of the latter, it became bound by a contract of the selling company with a railroad intersecting it at a street crossing to share the expense of maintaining lights which the city might require the railroad to keep up at such crossing. The obligation was an existing debt and included such lights as the city might lawfully require the railroad to install in the future.   (P. 54).

Questions certified from the Court of Civil Appeals for the First District in an appeal from Jefferson County.

*Crook, da Ponte & Lawhon,* for appellant.—Where a street railroad corporation has a franchise to lay its tracks in the streets of a municipality, it may, in the exercise of its rights under the franchise, cross the tracks of a steam, or commercial, railroad; and consent of the steam railroad is not required to perfect the right to cross, nor is the giving of consent a good or valuable consideration in law, sufficient to support the contract sued on.   Southern Ry. Co. v. Atlanta R. & P. Co., 51 L. R. A., 125; East St. L. R. Co. v. L. & N. E Co., 79 C. C. A., 107; Buffalo, R. & P. Co. v. Dubois T. Co., 24 A., 179; St. Louis & S. Co. v. Lindell Ry. Co., 88 S. W., 634; Nellis, St. Sur. R's., p. 186.

The fact that appellant bought the property and assets of the Beaumont Street Railway Company at a voluntary sale for a valuable consideration did not make it liable on that company's contracts in the absence of an agreement on appellant's part to carry them out or assume liability thereon.   Dallas C. T. Co. v. Maddox, 31 S. W., 702; Eddy v. Hinnant, 82 Texas, 356; Texas & C. Ry. Co. v. Lyons, 34 S. W., 362; Williams v. Texas M. R. Co., 22 Texas Civ. App., 278.

*H. M. Whitaker* and *Glass, Estes & King,* for appellee.—When two railroads or a railroad and a street car line intersect, the two companies owning such lines may by contract provide for the manner and cost of construction of such crossing and also the cost of its maintenance, including the cost and expense of burdens or obligations imposed by reason of such crossing, and said contract providing for such things is supported by an ample and sufficient consideration. 8 Am. & Eng. Ency. Law, 338, 343, 351, 354; 10 id., 1174.

Even if some other agreement or contract embraced in the same instrument might be void or voidable, it in no way impairs the validity of such part of the instrument as may not be subject to such objection.   The part which failed is simply a nullity.   It implies no taint to the residue.   Bishop on Contracts, sec. 74; Chitty on Contracts, 11.

While the word "debt" may ordinarily mean a moneyed demand, in its more general use it means that which one person is bound to

pay or perform to another.    8 Am. and Eng Ency. of Law, 983;
Barber v. Dallas, 83 Texas, 150.

MR. JUSTICE BROWN delivered the opinion of the court.

Certified question from the Court of Civil Appeals for the First
Supreme Judicial District.    The statement and questions are as fol-
lows:

"This case is pending before us on motion for rehearing.

"Appellee Texarkana & Fort Smith Railway Company, plaintiff
below, sued the appellant Beaumont Traction Company, defendant,
to recover one-half of the cost of maintaining electric lights at four
certain street crossings in the city of Beaumont, where the railway
lines of the parties intersected, which lights were so maintained by
appellee by requirement of the city of Beaumont.    Plaintiff alleged
that the liability of the defendant for said one-half arose by virtue
of two certain contracts, the first between plaintiff and the Beau-
mont Street Railway Company, the obligations of which, plaintiff
alleged, were assumed by defendant, and the second between plain-
tiff and defendant, by which contracts, it alleged, defendant and its
predecessor, the Beaumont Street Railway Company, obligated them-
selves, among other things, to pay one-half the cost and expense
of the lights which the city authorities of Beaumont might require
to be maintained at any of the street crossings where the lines of
the parties intersected.

"Defendant answered by general denial and specially pleaded that
at the time of and before the making of the contracts the Beaumont
Street Railway Company and the Beaumont Traction Company had
each been granted a franchise by the city of Beaumont to build lines
of street railway upon the streets and street crossings mentioned
in the contracts sued on, and thereby acquired the right to do so;
and that appellee, which had nothing more than a franchise or ease-
ment to construct its tracks at those places, could not impose terms
on the street railway companies as a condition of giving its assent
to the crossing of its tracks in the streets of the city, and there was,
therefore, no consideration for the contracts.

"The city of Beaumont, having granted to the Texarkana & Fort
Smith Railway Company an easement for a line of railway over cer-
tain of its streets, in pursuance of which the railway company con-
structed its railroad, thereafter granted to the Beaumont Street
Railway Company a franchise to construct and operate a line of street
railway over certain streets, and over street crossings at the inter-
section of College Street and Railroad Avenue; Washington Street
and Pearl Street, and Washington Street and Sabine Street; and
likewise granted to the Beaumont Traction Company a franchise to
construct its line of street railway over certain streets and over cross-
ing at the intersection of Park Street and Railroad Avenue.

"The railroad company laid its track upon the streets at the inter-
sections above named by virtue of the franchise granted to it by the
city of Beaumont, and owned no interest in the fee, or other right,
save its franchise to lay its tracks upon the streets and run its cars
over them.

"On July 11, 1902, the railroad company and the Beaumont Street Railway Company entered into a contract which recites that the latter is engaged in the construction of a line of street railway on certain streets in the city of Beaumont and desires to construct said line on certain streets and across the line of railway of appellee at the intersection of College Street and Railroad Avenue, Washington and Pearl Streets and Washington and Sabine Streets, 'and desires to obtain the consent of the party of the first part (appellee) to such construction. . . . Now, therefore, in consideration of the . . . faithful performance of the party of the second part (appellant) of the terms, provisions and stipulations herein set forth, it is hereby agreed . . . that the said party of the first part has granted and does hereby grant unto the party of the second part, upon the conditions hereinafter set forth, the right and privilege to construct, maintain and operate a single track electric railway across the line of railroad of the party of the first part at the street intersections as above set out.' The contract then goes on to provide for the construction of the crossing by appellant at its own expense and prescribed many details and imposes many obligations on the street railway company. Paragraph 8 provides:

" 'It is further understood and agreed, that should at any time the city authorities of the city of Beaumont require that a watchman, extra guard, lights or gates be maintained at any of the crossings so erected by the party of the second part, over the lines of the party of the first part, it is agreed that the party of the first part shall put in such extra guards, lights or gates and employ such watchman or watchmen and one-half of the expense incurred by reason thereof shall be chargeable against the party of the second part, and party of the second part hereby agrees to pay the same.'

"On April 20, 1903, the railroad company and the traction company entered into contract which is practically in the same words and to the same effect as that between the railroad company and the street railway company, except that it relates to and covers the crossing at Park Street and Railroad Avenue only.

"The Beaumont Street Railway Company and the Beaumont Traction Company are distinct corporations, each having its own charters, and, at the date of the contracts and time of trial, were carriers of passengers in the city of Beaumont, and the said crossings were desired to be made in building the street railway lines under their franchises; and in laying tracks across the track of appellee's railroad at said street intersections they were acting under and in accordance with their respective franchises.

"No exclusive franchise was granted or attempted to be granted by the city of Beaumont to the railroad company over said streets or street crossings.

"On the 12th day of February, 1903, the Beaumont Street Railway Company sold to the Beaumont Traction Company its property of every kind, including the franchise granted to it by the city of Beaumont, excepting only its franchise to be a corporation, for the consideration, as stated in the bill of sale, of 3000 fully paid and nonassessable shares of the capital stock of the Beaumont Traction

Company and 'in further consideration and as a part of the purchase price of the property hereinafter conveyed, the said Beaumont Traction Company shall assume and pay all. the debts of said Beaumont Street Railway Company, secured and unsecured, outstanding and existing at this date. . . .'

"On February 19, 1904, the railroad company, in conformity to the requirements of the city of Beaumont, installed, and ever since has maintained, lights at the four crossings mentioned, and at the date of the trial had paid therefor the sum of $1449.08, one-half of which, with six percent interest, amounts to $816.78, for which judgment was rendered.

"Upon the foregoing statement we deem it wise to certify for your determination the following questions:

"1.   Was the agreement of the Beaumont Street Railway Company and the Beaumont Traction Company to pay one-half the cost of installing and maintaining the lights, as mentioned in said contract, supported by a valid consideration?

"2.   Under the contract of sale from the Beaumont Street Railway Company to the Beaumont Traction Company, can the latter be held liable upon the obligation of the former to pay one-half the cost of installing and maintaining said lights?"

We answer the first question in the affirmative.

The city of Beaumont in granting the franchise to the street railway company to construct its tracks upon the streets of the city had the right to require such things to be performed by it as might be necessary for the protection of the public and passengers upon its cars against dangers that might arise from the crossing of the railroad on the streets. (Booth, St. Rys., sec. 22; 27 Am. & Eng. Ency. Law, p. 48.)   Having given its consent under the statute of the State to the railway company to construct its tracks upon the streets in question, the city still had the right and power to require the railway company to observe such care as might be found necessary to protect the public and its passengers from dangers arising out of the crossings over its track by the street cars.   It follows that at the time this contract was made, the street car company was liable to have demands made of it by the city to provide lights and flagmen at the crossings over the railroad, and there being this liability on the part of each to the control of the city, it was proper and lawful that provision should be made for the observance of it by one or the other and it was just to divide the expense of guarding against a common danger.

The construction of the street car track across the railroad track on the street created a danger which was common to both parties, which imposed an obligation of care and diligence upon each and upon both.   In this state of facts we are of opinion that the attitude of the two companies was that which would have been the case if each had been a railroad company, under which conditions the law would not only permit but would favor a settlement of the matter between the two corporations by contract.   (Elliott, Railroads, sec. 1117, 125 Pa. St., 232.)

Disregarding that part of the contract which relates to the grant-

ing of permission by the railroad company for the street car company to cross its line of railroad, we will consider this clause:

"It is further understood and agreed, that should at any time the city authorities of the city of Beaumont require that a watchman, extra guard, lights or gates be maintained at any of the crossings so erected by the party of the second part, over the lines of the party of the first part, it is agreed that the party of the first part shall put in such extra guards, lights or gates and employ such watchman or watchmen and one-half of the expense incurred by reason thereof shall be chargeable against the party of the second part, and party of the second part hereby agrees to pay the same."

This language embodies a contract complete in itself, expressing the terms and specifying what is to be done by each party; the railroad company to perform acts beneficial to the street car company, which agrees to pay for the service. They are mutual promises which constitute a valid consideration which will support the contract as to both. If we assume that the portion of the writing which granted permission to the street car company to build and operate its track across the line of the railroad is invalid, nevertheless it is not an unlawful consideration, therefore, it will not vitiate that portion of the contract which is supported by a valid consideration.

We answer the second question in the affirmative.

The statement presented in connection with the certified question shows that on the 12th day of February, 1903, the Beaumont Street Railway Company sold all of its property and franchises to the Beaumont Traction Company. except its right to be a corporation, and in the contract of sale the traction company undertook and agreed as part of the consideration of the said purchase to assume and pay all the debts of the said Beaumont Street Railway Company. This language is plain and comprehensive and having determined that the contract between the street car company and the railroad company is valid, it follows that the claim was a debt which was contracted by the street car company, outstanding at the time of the transfer of its property to the traction company and within the terms of the assumption of such debts by the traction company.